# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| **FRAZIER CAUDLE**, ) | |
| 7421 Blair Road, N.W. ) | |
| Washington, D.C.  20012 ) | |
| ) | |
| **NIKEITH GOINS**, ) | |
| 6847 Milltown Court ) | |
| District Heights, MD  20747 ) | |
| ) | |
| **WILLIAM JAMES**, ) | Case No. 1:08-cv-00205-HHK |
| 4908 Cleveland Court ) | |
| Temple Hills, MD  20748 ) | |
| ) | |
| **SHOLANDA MILLER**, ) | |
| 218 Ridge Road, S.E. ) | |
| Washington, D.C.  20019 ) | |
| ) | |
|          and ) | |
| ) | |
| **DONALD SMALLS**, ) | |
| 7201 Perrywood Road ) | |
| Upper Marlboro, MD  20772 ) | |
| ) | |
|          Plaintiffs, ) | |
| ) | |
|          v. ) | |
| ) | |
| **DISTRICT OF COLUMBIA**, ) | |
| serve: ) | |
| Hon. Adrian M. Fenty ) | |
| Mayor of the District of Columbia ) | |
| Executive Officer of the Mayor ) | |
| 1350 Pennsylvania Avenue, NW ) | |
| Suite 310 ) | |
| Washington, DC  20004 ) | |
| ) | |

Peter J. Nickles                  )
Interim Attorney General of the    )
  District of Columbia          )
Office of the Attorney General     )
Government of the District of Columbia )
One Judiciary Square          )
441 4th Street, NW           )
Suite 1060N               )
Washington, DC  20001        )
                        )
      and                )
                        )
**CATHY L. LANIER**,         )
In her official capacity as Chief of Police, )
Metropolitan Police Department    )
Government of the District of Columbia )
300 Indiana Avenue, NW       )
Washington, DC  20001        )
                        )
      Defendants.          )
_____)

## FIRST AMENDED COMPLAINT FOR DECLARATORY
## AND INJUNCTIVE RELIEF AND DAMAGES

### NATURE OF ACTION

1.     Plaintiffs Frazier Caudle, Nikeith Goins, Williams James, Sholanda Miller, and

Donald Smalls are African-American officers in the Metropolitan Police Department ("MPD")

of Defendant the District of Columbia.  The MPD's Chief of Police is Defendant Cathy L.

Lanier, sued in her official capacity.  Plaintiffs charged their commanding officer, Lt. Ronald

Wilkins, with violating the civil rights of African-American officers in their unit by initiating an

anonymous complaint sent to the MPD on June 16, 2006, and by filing a signed complaint on

August 24, 2006.  Defendants retaliated against Plaintiffs for asserting their civil rights by, *inter*

*alia*, promptly singling them out for transfer and demotion from their elite unit.  Plaintiffs bring

this action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et*

seq. ("Title VII"), and the District of Columbia Human Rights Act, DC Code § 2-1401.01, *et seq.* ("DCHRA"), to redress injuries they have suffered and continue to suffer as a result of Defendants' retaliation.

2.     The Focus Mission Unit ("FMU") is an elite unit in the MPD's First District that targets major criminal activities.  Officers Caudle, Goins, James, Miller, and Smalls were selected to serve in the unit based on their exemplary records in other units in the MPD. Plaintiffs served with distinction and without incident in the FMU under several superior officers before Lt. Wilkins was put in charge of the unit during the latter part of 2005.  Wilkins is white.

3.     As a result of incidents involving Lt. Wilkins, four of the Plaintiffs arranged for a letter to be sent anonymously to the First District's commander on June 16, 2006, charging Lt. Wilkins with discriminatory conduct in violation of Title VII.  Wilkins was the subject of an internal MPD investigation as a result.  Upon information and belief, Wilkins made a deliberate effort to determine the identity of the complainants and concluded that all of the Plaintiffs were responsible for the letter.

4.     The First District announced in August 2006 that all members of the FMU would have to reapply for their positions, and Lt. Wilkins announced that he would decide who would be permitted to remain in the FMU.  Upon information and belief, Wilkins viewed this as an opportunity to retaliate against Plaintiffs for the June 16 letter.

5.     Plaintiffs all reapplied except for Officer Miller, who had previously requested a transfer contingent on the MPD's agreement to assign her to a day shift.  On August 23, 2006, Officer Miller was demoted from the FMU and transferred to a night shift in another unit effective immediately.

6.     On August 24, 2006, Plaintiffs filed a signed complaint with the District of Columbia's Office of Human Rights ("DC OHR") and the federal government charging the MPD and Lt. Wilkins with civil rights violations.

7.     Approximately a month later, Officers Caudle, Goins, James, and Smalls were told that they could not retain their positions in the FMU.  They were promptly demoted from the FMU and transferred to less desirable and less prestigious positions in the First District.

8.     The only other officer denied the opportunity to remain in the FMU was a white officer known to have a good relationship with Plaintiffs.  None of the officers who were permitted to remain in the FMU had joined in the June 16 or August 24 complaints.

9.     The District of Columbia and Chief Lanier, by and through their officials and employees, denied Plaintiffs the opportunity to continue serving in the FMU, demoted and transferred Plaintiffs from the FMU, and took other adverse actions against Plaintiffs in retaliation for the civil rights complaint Plaintiffs asserted in August 2006 and/or in retaliation for the June 2006 civil rights complaint believed by Defendants to have been asserted by Plaintiffs.  These actions violated Plaintiffs' rights under 42 U.S.C. § 2000e-3 of Title VII and DC Code § 2-1402.61 of the DCHRA.

10.     On the basis of the violations asserted herein, Officers Caudle, Goins, James, Miller, and Smalls seek compensatory and punitive damages, a declaratory judgment, and an injunction directing Defendants to desist from and remedy its retaliatory conduct.

## PARTIES

11.     Officer Frazier Caudle is an officer in the Metropolitan Police Department and an African-American resident of Washington, D.C.  Officer Caudle joined the MPD in 1999 and was promoted to the First District FMU in 2004.

12.     Officer Nikeith Goins is an officer in the Metropolitan Police Department and an African American.  Officer Goins joined the MPD in 1999 and was promoted to the Auto Theft Unit, which is generally viewed as a part of the First District FMU, in 2004.

13.     Officer Williams James is an officer in the Metropolitan Police Department and an African American.  Officer James joined the MPD in 1988 and was promoted to the First District FMU in 1995.

14.     Officer Sholanda Miller is an officer in the Metropolitan Police Department and an African-American resident of Washington, D.C.  Officer Miller joined the MPD in 2002 and was promoted to the First District FMU in 2004.  Officer Miller was named "Rookie Officer of the Year" in the First District in 2003.

15.     Officer Donald Smalls is an officer in the Metropolitan Police Department and an African American.  Officer Smalls joined the MPD in 1987 and was promoted to the First District FMU in 2000.

16.     Officers Caudle, Goins, James, Miller, and Smalls have all received numerous Commanding Officer's Commendations, known as "PD 751s," and other awards and commendations from the MPD.

17.     Defendant District of Columbia is a municipal corporation.  The District of Columbia acts by and through its primary law enforcement agency, the Metropolitan Police Department.  The First District is a constituent division of the MPD.  The Commander of the First District in 2006 was Diane Groomes, who has since been promoted to Assistant Chief with responsibility for the Patrol Services and School Security Bureau.  The First District is part of this Bureau.  Commander David Kamperin currently commands the First District.  The FMU is a constituent division of the First District.

18.    Defendant Cathy L. Lanier is the Chief of Police of the Metropolitan Police Department.  This is the highest ranking position in the MPD.

## JURISDICTION AND VENUE

19.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(4), and 28 U.S.C. § 1367.

20.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the District of Columbia and Chief Lanier, in her official capacity, reside in the District of Columbia and the events giving rise to the claims occurred in the District of Columbia.

## FACTUAL BACKGROUND

A.    **Plaintiffs' Service In The FMU**

21.    Officers Frazier Caudle, Nikeith Goins, Williams James, Sholanda Miller, and Donald Smalls joined the MPD between 1987 and 2002.  Each served in the First District for years and maintained an exemplary record.

22.    The First District's Focus Mission Unit is an elite unit that principally targets vice crimes and other major criminal activities and conducts long term criminal investigations. Though its precise composition shifts, it is generally composed of 12 to 20 officers, two or three sergeants, and one lieutenant.  The officers serve in plain clothes and drive unmarked vehicles.

23.    Between 1995 and 2004, Officers Caudle, Goins, James, Miller, and Smalls were invited to join the FMU.  They did not have to apply to the FMU, but were instead hand-picked by their superior officers based on the excellence they demonstrated in their other assignments.

24.    Plaintiffs served with distinction in the FMU under one or more lieutenants and several sergeants.

25.    Plaintiffs' experience in the FMU changed significantly, however, when Lt. Ronald Wilkins was transferred from another unit to take command of the FMU during the latter part of 2005.  Lt. Wilkins soon began to treat Plaintiffs unprofessionally and inappropriately, and to show favoritism toward other FMU officers.  Plaintiffs believed that their race was the reason that Lt. Wilkins treated them in this manner.

**B.    Plaintiffs' Civil Rights Complaints Against Lt. Wilkins**
**And The Retaliatory Dismissal Of Plaintiffs From The FMU**

26.    Plaintiffs' belief that Lt. Wilkins was discriminating against them on account of their race was expressed in an anonymous letter to Commander Groomes dated June 16, 2006. The five-page, single-spaced letter detailed several incidents of racially discriminatory conduct by Lt. Wilkins, including taking adverse employment actions against African-American officers based on their race and subjecting African-American officers to a racially hostile work environment.  The letter specifically alleged violations of Title VII.  The letter also included allegations of racially-motivated misconduct by Lt. Wilkins involving civilians.  Plaintiffs Caudle, James, Miller, and Smalls were responsible for the letter.

27.    Upon information and belief, Lt. Wilkins was given a copy of the June 16 letter and/or was otherwise made aware of the content of the letter soon after it was delivered to Commander Groomes.  Upon information and belief, Lt. Wilkins tried to determine who was responsible for the letter, and concluded that Caudle, Goins, James, Miller, and Smalls were responsible for it.

28.    The MPD's Internal Affairs Division conducted an investigation of Lt. Wilkins as a result of the complaint initiated by Plaintiffs.  Lt. Wilkins was made aware of the investigation. As a direct result of the investigation, Assistant Chief of Police William R. Ponton recommended to the Director of the Disciplinary Review Office on December 14, 2006, that Lt. Wilkins be

cited for Adverse Action based on Dereliction of Duty and Providing False Statements. The latter violation was based on false statements that Lt. Wilkins knowingly made to Internal Affairs officers conducting the investigation. Upon information and belief, this recommendation was accepted and Lt. Wilkins was disciplined. Lt. Wilkins has, however, subsequently been given a more prestigious assignment.

29.    On or about August 11, 2006, while the Internal Affairs investigation was pending, Lt. Wilkins announced that all members of the First District FMU would have to reapply for their positions by August 18, 2006. First District FMU officers had never previously been required to reapply for their positions.

30.    Lt. Wilkins informed the FMU officers that he would decide which officers who wanted to remain in the FMU would be permitted to do so. Upon information and belief, Lt. Wilkins viewed this as an ideal opportunity to retaliate against and punish Plaintiffs for their role in the June 16 complaint against him.

31.    Officers Caudle, Goins, James, and Smalls all submitted complete applications to retain their positions in the FMU in advance of the August 18, 2006 deadline.

32.    Officer Miller did not reapply for the FMU because she had requested a transfer from the FMU due to family obligations, contingent on her reassignment to a day shift, in late-July 2007. The MPD had informed Officer Miller that her request would be granted.

33.    On or about August 23, 2006, after the deadline for reapplying to the FMU, Lt. Wilkins informed Officer Miller that her assignment to the FMU was over, and that she would be required to work a night shift in another unit. Officer Miller told Lt. Wilkins that she did not want to leave the FMU if she would still be required to work a night shift, but Lt. Wilkins declined to reconsider or otherwise offer any assistance.

34.     On August 24, 2006, while the applications to remain in the FMU were pending, all five Plaintiffs filed a second civil rights complaint.  In a signed letter complaint to DC OHR and the federal government, Plaintiffs charged the MPD and Lt. Wilkins with Title VII violations.  One additional FMU officer, Gregory Philpotts, also signed the letter.

35.     Upon information and belief, Lt. Wilkins learned of the content of and signatories to the August 24 complaint shortly after it was filed.

36.     In or around late-September or early-October 2006, Officers Caudle, Goins, James, and Smalls were informed that their applications to remain in the FMU had been denied. They were promptly transferred to other units.

37.     Lt. Wilkins made the decision to deny Officers Caudle, Goins, James, and Smalls's applications.  Upon information and belief, any ratification by Commander Groomes or another superior officer was *pro forma*.  Lt. Wilkins denied Officers Caudle, Goins, James, and Smalls's applications, and transferred them out of the FMU, in retaliation for their filing of the August 24, 2006 complaint and/or in retaliation for their perceived filing of the June 16, 2006, letter.

38.     Lt. Wilkins granted the application of every other FMU officer who had reapplied for the FMU, except one.  The only officer beside the Plaintiffs who wanted to remain in the FMU but was not allowed to was Officer Brett Bartholomew, a white officer known to be on good terms with the Plaintiffs.  Not a single one of the officers who Lt. Wilkins allowed to remain in the FMU had participated in the June 16 or August 24 complaints, and, upon information and belief, Lt. Wilkins did not believe that any had participated.

39.     Upon information and belief, Lt. Wilkins was also responsible for the dismissal of Officer Miller from the FMU.  Any ratification by Commander Groomes or another superior

officer was *pro forma*. Lt. Wilkins dismissed Officer Miller from the FMU on August 23, 2006, in retaliation for her perceived filing of the June 16, 2006 letter. Wilkins refused to reconsider his dismissal of Officer Miller in retaliation for her filing of the August 24, 2006 complaint and/or in retaliation for her perceived filing of the June 16, 2006 letter.

40.    The reassignments that Officers Caudle, Goins, James, Miller, and Smalls received when they were transferred from the FMU were less prestigious, provided less opportunity for career advancement, and in some cases provided less remuneration.

**C.    Additional Retaliatory Conduct**

41.    Prior to and after their demotion, dismissal, and transfer from the FMU, Plaintiffs were also subjected to other forms of retaliation for the June 16 and August 24 complaints.

42.    Between June 16, 2006, and their transfer, Plaintiffs were denied information that they needed to carry out their duties effectively and safely, such as the time and location of observation posts, the presence in their vicinity of armed robbery suspects, and the unit's plan to execute a search warrant. Plaintiffs were also subjected to a retaliatory hostile work environment in the FMU by, among other things, being separated and assigned to different cars, and being threatened with reassignment out of the FMU. Lt. Wilkins and other FMU officers, acting with Wilkins's knowledge and assent, were responsible for these retaliatory acts.

43.    For no valid reason, Officer Smalls's leave request was denied in June or July 2006 while similarly situated officers not suspected of sending the June 16 letter were granted leave. Officer Smalls was interrogated and reprimanded by a superior officer, without any basis, for making the leave request.

44.    Upon information and belief, when Commander Kamperin took over the First District in the fall of 2007, he was told by Plaintiffs' former FMU colleagues and/or others in the

MPD that Officers Goins, James, and Smalls were difficult officers because of the complaints they made about Lt. Wilkins in 2006. Commander Kamperin soon transferred Officers Goins, James, and Smalls to even less desirable positions in further retaliation for those complaints.

**D.    Defendants' Responsibility For Lt. Wilkins's Retaliatory Conduct**

45.    At all times relevant to this suit, Lt. Wilkins was acting within the scope of his duties as an employee, agent, and/or representative of the Defendants. The retaliatory actions described above were carried out (a) at the direction of and with the consent, encouragement, knowledge, and ratification of Defendants, and/or (b) under Defendants' authority, control, and supervision.

46.    The Defendants knew or reasonably should have known that some harm might be caused by the acts or omissions of Lt. Wilkins, who was entrusted with a high-ranking supervisory position.

**E.    Administrative Proceedings**

47.    Plaintiffs' August 24, 2006, administrative complaint was formally accepted in October 2006 as a series of separate complaints, one per signatory, and was treated as dual-filed with DC OHR and the United States Equal Employment Opportunity Commission. The complaints were assigned to DC OHR for investigation. The formally-accepted complaints included the charge that Plaintiffs were dismissed from the FMU in retaliation for the June 16 and August 24 complaints about Lt. Wilkins and others in the MPD.

48.    In June 2007, Plaintiffs requested right to sue letters pursuant to Title VII and its implementing regulations. Right to sue letters were finally issued to Plaintiffs dated November 8, 2007, and received several days later.

## INJURY TO PLAINTIFFS

49.     As a direct and proximate result of Defendants' retaliatory practices, Plaintiffs have suffered, and in the future will continue to suffer, irreparable loss and injury including, but not limited to, economic loss, humiliation, embarrassment, mental and emotional distress, and the deprivation of their rights to equal employment opportunities.

50.     Plaintiffs have been, and continue to be, disadvantaged in their careers because of their dismissal from the Focus Mission Unit and reassignment to less desirable and less prestigious positions.  Service in the FMU is advantageous to career advancement because, *inter alia*, investigative experience such as that which is gained in the FMU is an important qualification for promotion to higher rank.  Positions with higher rank provide higher salaries.

51.     Through the actions of their employees, agents, and/or representatives described above, Defendants acted intentionally, maliciously, oppressively, and with willful, callous, wanton, and reckless disregard for Plaintiffs' federally and locally protected rights.

## COUNT I

### (Title VII)

52.     Plaintiffs reallege and incorporate by reference all of the allegations set forth in paragraphs 1 through 51 above.

53.     The foregoing actions by Defendants constitute retaliation against Plaintiffs for opposing unlawful and discriminatory employment practices and/or for making a charge of unlawful and discriminatory employment practices, in violation of 42 U.S.C. § 2000e-3(a).

## COUNT II

### (District of Columbia Human Rights Act)

54.     Plaintiffs reallege and incorporate by reference all of the allegations set forth in paragraphs 1 through 53 above.

55.     The foregoing actions by Defendants constitute retaliation against and interference with Plaintiffs because of their exercise and enjoyment of their rights to be free from unlawful and discriminatory employment practices, in violation of DC Code § 2-1402.61(a).

56.     The foregoing actions by Defendants constitute the encouragement of other persons to retaliate against, interfere with, intimidate, and discriminate against Plaintiffs because of their opposition to unlawful and discriminatory employment practices and/or because they made a charge of unlawful and discriminatory employment practices, in violation of DC Code § 2-1402.61(b).

## PRAYER FOR RELIEF

57.     WHEREFORE, Plaintiffs pray that this Court grant them the following relief:

(a)     enter a declaratory judgment finding that the foregoing actions of the Defendants violate 42 U.S.C. § 2000e-3 and DC Code § 2-1402.61;

(b)     enter a permanent injunction directing the Defendants and their directors, officers, agents, and employees to take all affirmative steps necessary to remedy the effects of the illegal, discriminatory conduct described herein and to prevent similar occurrences in the future;

(c)     award compensatory damages in an amount to be determined by the jury that would fully compensate Plaintiffs for the economic loss, humiliation, embarrassment, and mental and emotional distress caused by the conduct of the Defendants alleged herein;

(d)    award punitive damages to the Plaintiffs in an amount to be determined by the jury that would punish the Defendants for their willful, wanton, and reckless conduct alleged herein and that would effectively deter the Defendants from engaging in similar conduct in the future;

(e)    award Plaintiffs their reasonable attorneys' fees and costs incurred in this action and the administrative proceedings that preceded it; and

(f)    order such other relief as this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiffs request trial by jury as to all issues in this case.

Date:  March 17, 2008

Respectfully submitted,

___/s/_____
John P. Relman (D.C. Bar No. 405500)
Glenn Schlactus (D.C. Bar No. 475950)
RELMAN & DANE PLLC
1225 19th Street, N.W.
Suite 600
Washington, D.C. 20036
(202) 728-1888 (o)
(202) 728-0848 (fax)

*Attorneys for Plaintiffs*