UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FRAZIER CAUDLE, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>DISTRICT OF COLUMBIA, et al.<br><br>Defendant. | Civil Action 08-00205 (HHK) |

MEMORANDUM OPINION AND ORDER

Frazier Caudle, Nikeith Goins, Williams James, Sholanda Miller, and Donald Smalls (collectively, "plaintiffs") are Black police officers with the Metropolitan Police Department of the District of Columbia ("MPD"). They bring this action against the District of Columbia and Metropolitan Police Department Chief Cathy L. Lanier ("District") alleging that they were retaliated against in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and the District of Columbia Human Rights Act, D.C. Code § 2-1401.61 ("DCHRA"). Before the court is the District's motion for partial summary judgment.[1]

Upon consideration of the motion, the opposition thereto, and the oral argument of counsel, the court concludes that: (1) the District's motion with respect to plaintiffs' claims to the extent they seek unliquidated damages under the DCHRA must be granted; (2) the District's motion with respect to plaintiffs' other claims for relief pursuant to the DCHRA, back pay and attorneys fees, must be denied; and (3) the District's motion to dismiss all claims against defendant Lanier must be granted.

---

[1] Plaintiffs apparently concede the District's motion with respect to their claims against Chief Lanier. In their opposition to defendants' motion, plaintiffs purport "to dismiss" all their claims against Chief Lanier. Pls.' Opp'n to Def. Lanier's Mot. to Dismiss Pls.' Am. Compl. and Def. District of Columbia's Mot. for Partial Summ. J. 2.

## I. BACKGROUND

Plaintiffs joined the MPD between 1987 and 2002. Between 1995 and 2004, each plaintiff was selected for the Focus Mission Unit ("FMU"), an elite MPD unit that targets vice crimes and major criminal activities. In 2005, Lt. Ronald Wilkins was put in charge of the FMU. Lt. Wilkins is White. Plaintiffs assert that once Lt. Wilkins assumed command of the FMU, Lt. Wilkins began to discriminate against plaintiffs on account of their race.

Plaintiffs contend that they expressed their concerns about discriminatory treatment, violations of Title VII, and misconduct in a letter to the district commander on June 16, 2006. Lt. Wilkins was allegedly investigated and disciplined as a result of plaintiffs' letter. Though the letter was sent anonymously, plaintiffs maintain that Lt. Wilkins concluded that plaintiffs were responsible.

In August 2006, Lt. Wilkins announced that all FMU officers who wished to continue working in the unit would have to reapply for their positions. Lt. Wilkins stated that he would decide which applicants would be permitted to remain with the FMU. Four of the five plaintiffs applied to continue working in the FMU. Officer Miller, the fifth plaintiff, requested a reassignment from the FMU and a day shift assignment.

On August 24, 2006, all five plaintiffs filed a complaint against Lt. Wilkins with the District of Columbia's Office of Human Rights and the United States Equal Employment Opportunity Commission.

In September or October 2006, the four plaintiffs who applied to continue working in the FMU learned that their applications had been denied. All four were transferred to other units within MPD. Officer Miller was denied her request to be reassigned to the day shift and was dismissed from the FMU.

## II. ANALYSIS

Plaintiffs' claims against the District are brought under the DCHRA and Title VII. The District moves for summary judgment[2] on plaintiffs' DCHRA claims on the grounds that plaintiffs failed to comply with the mandatory notice requirements of D.C. Code § 12-309. Section 309 provides that

> an action cannot be maintained against the District of Columbia for unliquidated damages unless, within six months after the injury or damage was sustained, plaintiffs give notice in writing to the mayor of the District about the approximate time, place, cause, and circumstances of the injury or damage.

D.C. Code § 12-309. While conceding that they did not provide § 12-309 notice and that they, thus, are unable to maintain their DCHRA claims seeking unliquidated damages, plaintiffs assert that § 12-309 is no impediment to their DCHRA claims seeking back pay and attorneys' fees, types of relief that are not "unliquidated." The District rejoins that back pay and attorneys' fees are unliquidated forms of relief and that plaintiffs' failure to comply with § 12-309 requires that their DCHRA claims be dismissed in their entirety. The District's position is without merit.

### A.   BACK PAY

Section 12-309 only applies to claims for unliquidated damages. *Byrd v. District of Columbia*, 538 F. Supp. 2d 170, 176 (D.D.C. 2008) (*citing Lively v. Cullinane*, 451 F. Supp. 999,

---

[2] Pursuant to Fed. R. Civ. P. 56, summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions on file and affidavits show that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. "In determining a motion for summary judgment, the court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." LCvR 7(h). As a general rule, "[i]n deciding whether there is a genuine issue of fact before it, the court must assume the truth of all statements proffered by the party opposing summary judgment." *Greene v. Dalton*, 164 F.3d 671, 674 (D.C. Cir. 1999). Material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

1000 (D.D.C. 1976)). Thus, a plaintiff's failure to comply with § 12-309 does not affect her ability to recover liquidated damages or equitable relief. *Byrd*, 538 F. Supp. 2d at 176.

Damages are liquidated and not addressed by § 12-309 if they are for "an easily ascertainable sum certain." *Beeton v. District of Columbia*, 779 A.2d 918, 925 (D.C. 2001) (*quoting Hartford Acc. & Indem. Co. v. District of Columbia,* 441 A.2d 969, 974 (D.C. 1982)); *cf.* BLACK'S LAW DICTIONARY 419 (8th ed. 2004) (defining unliquidated damages as "[d]amages that cannot be determined by a fixed formula and must be established by a judge or jury."). Provided that they are "capable of ascertainment by computation," damages are considered liquidated even if the amount has "not already [been] rendered certain by a judgment or agreement." *District of Columbia v. World Fire & Marine Ins. Co.*, 68 A.2d 222, 225 (D.C. 1949). Back pay awards in employment discrimination cases are commonly considered a form of equitable relief and are readily capable of "ascertainment by computation." Thus "back pay," at least in the context of employment discrimination litigation, is a "liquidated" form of relief which may be sought even in the absence of §12-309 notice. *See Beeton*, 779 A.2d at 921, 925-26 (upholding the trial court's determination that back pay and benefits were liquidated damages and were recoverable even when a plaintiff fails to comply with the notice provision of § 12-309.); *Chisholm v. District of Columbia*, 533 F. Supp. 2d 175, 179 (D.D.C.).

In support of its position that plaintiffs' claims for back pay seek unliquidated damages, the District cites two cases brought pursuant to the National Labor Relations Act ("NLRA"), *National Labor Relations Board v. Deena Artware, Inc.*, 207 F.2d 798, 801 (6th Cir. 1953) and *In re Eagle Bus Mfg., Inc.*, 158 B.R. 421, 424 (D.Tex. 1993)). In *Deena Artware*, the National Labor Relations Board ("NLRB") unsuccessfully sought a restraining order preventing *Deena Artware*, a

4

company with an unsatisfied back-pay obligation, from depleting its funds through the transfer of funds to a parent company. *Deena* at 802. In *Eagle*, the NLRB unsuccessfully challenged a bankruptcy court's estimation of Greyhound Lines' possible back-pay liability due to Greyhound's alleged violations of the NLRA. *Eagle*, 158 B.R. at 437. In both cases, the court referred to the companies' back-pay obligations as being unliquidated damages. Nevertheless*, Deena Artware* and *Eagle* provide scant support for the District's position.

*Deena Artware* and *Eagle* were actions brought under a statute enacted by Congress to adjudicate and resolve disputes between labor and management regarding unfair labor practices and collective bargaining agreements. When a violation of the NLRA occurs, the NLRB has complete discretion to craft a remedy that best effectuates the public policy of the Act. *Phelps Dodge Corp. v. National Labor Relations Board*, 313 U.S. 177, 198-200 (1941); *Nathanson v. National Labor Relations Board*, 344 U.S. 25, 27 (1952). The NLRB does not seek to vindicate individual rights and if the NLRB decides that back pay should be included as a remedy for a violation of the NLRA the remedy is often not "easily ascertainable." In calculating back-pay liability, the NLRB considers "every socially desirable factor," including, for example, prevailing business conditions, the circumstances surrounding the employee's discharge, the employee's duty to mitigate, the employee's conduct during the labor activity, the employee's ability to work, the employee's willingness to accept alternate work, and whether the employee's position still exists. *Phelps*, 313 U.S. at 198, 200; *National Labor Relations Board v. Seven-Up Bottling Co. of Miami*, 344 U.S. 344, 346-347 (1953); *Nathanson*, 344 U.S. at 29-30.

The kind of factors that are considered in determining whether and how back pay should be determined to effectuate federal labor policy has little if any relevance to the issue of whether back pay is a liquidated or unliquidated form of relief in suits brought under the DCHRA. In this regard the admonition, "[i]t is well to remember that significance is given to broad and general statements of law only by comparing the facts from which they arise with those facts to which they supposedly apply," readily comes to mind. *Roundtree v. United States*, 581 A.2d 315, 340 (D.C. 1990), (Schwelb, J., concurring in part and dissenting in part) (citing *Kraft v. Kraft*, 155 A.2d 910, 913 (D.C. 1959)); *accord Armour & Co., v. Wantock*, 323 U.S. 126, 132-33 (1944) (stating that words of the court's opinions are to be read in light of the facts under discussion and that transposition of these words to other facts is often misleading). Therefore, the references in *Deena Artware* and *Eagle* to back pay as being unliquidated relief do not persuade this court that such relief is unliquidated when it is sought in connection with claims brought under the DCHRA.[3]

**B.   ATTORNEYS' FEES**

In the District of Columbia, the general rule is that attorneys' fees are not considered damages at all. *F.W. Berens Sales Co., Inc. v. McKinney*, 310 A.2d 601 (D.C. 1973); *see also Harbor Ins. Co. v. Schnabel Foundation Co.*, 992 F.Supp. 431, 434 (D.D.C. 1997) ("The general rule is that attorneys' fees are not recoverable as damages unless provided for by contract or

---

[3] The District also asserts, in passing, that damages are not considered liquidated when "the amount of damages can reasonably be disputed by one of the parties." Def.'s Reply 3. Defendants do not elaborate and provide no authority for this proposition. Accordingly, the court does not address this argument. *See, e.g., Arizona v. Shalala*, 121 F. Supp. 2d 40, 46 n.4 (D.D.C. 2000) (refusing to consider an argument defendants raised "without citing any authority"); *City of Waukesha v. E.P.A.*, 320 F.3d 228, 254 (D.C. Cir. 2003) (quoting *SEC v. Banner Fund Int'l*, 211 F.3d 602, 613 (D.C.Cir. 2000)) (stating that the court does not address "'asserted but unanalyzed' contention[s]").

statute."). None of the exceptions to this general rule apply here.[4] Thus, because § 12-309 only applies to a particular subset of damages – liquidated damages – and attorneys' fees are not considered damages, the absence of notice under § 12-309 does not bar plaintiffs from recovering their attorneys' fees. *Byrd*, 538 F. Supp. 2d at 176.

### III. CONCLUSION

For the foregoing reasons, it is this 13th day of August 2008, hereby

**ORDERED** that the District's motion with respect to claims for unliquidated damages under the DCHRA is **GRANTED**; and it is further

**ORDERED** that the District's motion with respect to all other forms of relief sought pursuant to plaintiffs' DCHRA claim is **DENIED**; and it is further

**ORDERED** that the District's motion to dismiss all claims against Chief Lanier is **GRANTED**.

                                                Henry H. Kennedy, Jr.
                                                United States District Judge

---

[4] These exceptions include when damages are provided for in a contract or by statutory provision or when an action is unwarranted, "brought or maintained in bad faith, vexatiously, wantonly, or for oppressive reasons," or when "the very temple of justice has been defiled." *Wisconsin Ave. Assocs., Inc. v. 2720 Wisconsin Ave. Coop. Ass'n, Inc.*, 385 A.2d 20, 24 (D.C. 1978); *Berens*, 310 A.2d at 603 (providing examples of when these exceptions have applied) (internal citations omitted).