## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                                    )
FRAZIER CAUDLE, et al.,                             )
                                                    )
     Plaintiffs,                                   )     Case No. 1:08-cv-00205-HHK-AK
                                                    )
     v.                                            )     Next date:  Pre-Trial Conference
                                                    )                May 21, 2010
THE DISTRICT OF COLUMBIA,                           )
                                                    )
     Defendant.                                    )
_____)

## PLAINTIFFS' OBJECTION TO THE MAGISTRATE JUDGE'S JANUARY 22, 2010 ORDER [DOCKET NO. 130]

Pursuant to Federal Rule of Civil Procedure 72(a) and Local Rule 72.2, Plaintiffs respectfully submit this Objection to the Magistrate Judge's ruling at Docket No. 130 denying Plaintiffs' motion for reconsideration of the portion of the Magistrate Judge's December 29, 2009 Memorandum Opinion (Docket No. 113) that orders Defendant to produce backpay data only up until December 31, 2007 at this time.[1]

By requiring Plaintiffs to wait until just before trial to gain access to backpay data covering over half of the damages period in this case, the Magistrate Judge's ruling is clearly erroneous and contrary to law.  The Magistrate's ruling is contrary to the law entitling Plaintiffs to recover backpay up until judgment should they prevail on their claims.  The ruling is also clearly erroneous because it requires the parties to conduct expert discovery with Plaintiffs possessing less than half the backpay data to which they are entitled; this result defeats the

_____
[1] Pursuant to Local Rule 7(m), Plaintiffs conferred with Defendant and Defendant indicated that it opposes this motion.

purpose of expert discovery, places significant financial and practical burdens on Plaintiffs, and undermines potential settlement negotiations.

 Plaintiffs have alleged retaliation by Defendant and need backpay data through the present in order to determine Plaintiffs' resulting financial losses. Accordingly, Plaintiffs respectfully request that this Court order Defendant to supplement its production of pay data within five (5) days to provide pay data up until the present.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs, five members of the Metropolitan Police Department, brought this lawsuit to address the retaliation they suffered because they had the courage to complain about discrimination and civil rights violations perpetrated by their Lieutenant. *See* Pls.' Second Am. Compl. at ¶ 1. For years, Plaintiffs had been members of the elite Focus Mission Unit, a plainclothes unit specializing in detecting and combating narcotics violations. *See id.* at ¶¶ 23-25. After trying to address their concerns internally and being rebuffed, Plaintiffs submitted a written complaint to their Commander detailing their Lieutenant's discriminatory conduct. *See id.* at ¶ 28. Then everything changed. Shortly after their complaint, Plaintiffs were forced to reapply for the positions they had held in the Focus Mission Unit for years—a reapplication that was unprecedented in the Unit. *See id.* at ¶ 32. Defendant removed Plaintiffs from their positions in the elite Focus Mission Unit and assigned them to less prestigious positions offering less opportunity for remuneration. *See id.* at ¶ 43. Some Plaintiffs were stripped of their plainclothes and unmarked cars and sent directly to uniformed patrol positions—positions they held years prior as rookies. *See id.* at ¶¶ 8-10. Others were initially isolated in a made-up "unit" consisting of only Plaintiffs, before being sent back to uniformed patrol positions. *See id.* As a

result of Defendant's retaliation, Plaintiffs have suffered financial losses, including lost overtime opportunities. *See id.* at ¶¶ 57-58.

Making Plaintiffs whole for the injuries they suffered as a result of Defendant's retaliation requires compensating Plaintiffs for the backpay they lost as a result of Defendant's unlawful conduct, including Defendant's retaliatory transfers of Plaintiffs to positions offering less overtime pay. Plaintiffs have therefore reasonably sought to obtain from Defendant the pay records necessary to calculate Plaintiffs' backpay damages. In Plaintiffs' Document Request No. 17, Plaintiffs sought pay data for the period of January 1, 2000 to the present in order to conduct a backpay analysis calculating the financial losses Plaintiffs suffered as a result of Defendant's retaliation. After Defendant failed to produce the requested data, Plaintiffs moved to compel its production.

In the Court's December 29, 2009 ruling on Plaintiffs' Motion to Compel, the Magistrate Judge ordered Defendant to produce the "information necessary to conduct a backpay analysis." *See* Dec. 29, 2009 Mem. Op. at 17. However, in doing so, the Magistrate Judge only required Defendant to produce data for a limited period ending December 31, 2007. *See id.*

Plaintiffs moved for reconsideration of the portion of the Magistrate Judge's December 29, 2009 Memorandum Opinion that ordered Defendant to produce pay data only up until December 31, 2007, rather than to the present. *See* Pls.' Mot. for Recon. of a Portion of the Court's Dec. 29, 2009 Order (Docket No. 124). Plaintiffs moved for reconsideration of the Magistrate Judge's opinion on the basis of case law regarding the recoverability of backpay damages up through the time of judgment and the necessity of up-to-date backpay data in order to calculate Plaintiffs' losses. *See id.*

On January 22, 2010, the Magistrate Judge denied Plaintiffs' motion for reconsideration, while also acknowledging Plaintiffs' right to recover backpay beyond the December 31, 2007 date.  *See* Jan. 22, 2010 Mem. Op. (Docket No. 130).  The Court stated that the December 31, 2007 time limitation the Court imposed on Plaintiffs' Document Request No. 17 "does not operate as a 'cut-off' date for Plaintiffs' entitlement to backpay should the Plaintiffs prevail on that issue at trial." *See* January 22, 2010 Mem. Op. at 2.  The Magistrate Judge further indicated that Plaintiffs could obtain "up-to-date pay records immediately prior to the trial of this matter." *See id.*

However, while recognizing Plaintiffs' right to recover backpay losses suffered between January 1, 2008 and the present, the Magistrate Judge denied Plaintiffs' request to order Defendant to produce backpay data beyond December 31, 2007 prior to the February 2010 due date for Plaintiffs' backpay expert report.  *See id.* at 2-3.   The Magistrate Judge's stated reason for setting the December 31, 2007 limitation was to "expedite discovery in this case." *See id.* at 2.  The Magistrate Judge opined that it "should be adequate" for a backpay analysis for Plaintiffs to only have data up through December 31, 2007.  *See id.* at 3.

Plaintiffs submit this Objection because the Magistrate Judge's ruling requiring Plaintiffs to conduct their expert backpay analysis with backpay data for only fifteen months of the nearly four-year damages period in this case is clearly erroneous and contrary to law.

## STANDARD OF REVIEW

A District Judge may "modify or set aside any portion of a magistrate judge's order … found to be clearly erroneous or contrary to law."  LCvR 72.2(c).  For the reasons set forth below, the Magistrate Judge's ruling on Plaintiffs' Motion for Reconsideration is clearly

erroneous or contrary to law, and should therefore be set aside or modified by this Court.  *See*

Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A).

## ARGUMENT

Plaintiffs have alleged retaliation by Defendant following Plaintiffs' submission of a

written complaint regarding their Lieutenant's discriminatory conduct and civil rights violations.

These retaliatory actions taken against Plaintiffs between June 2006 and the present have caused

Plaintiffs economic losses, including lost overtime pay.  Plaintiffs require pay data through the

present in order to calculate these financial losses.

**A. Because Backpay Losses Are Recoverable Through the Date of Judgment, the
Magistrate Judge's Order Is Contrary to Law.**

As the acknowledged in the Magistrate Judge's January 22, 2010 ruling,[2] prevailing Title

VII plaintiffs are entitled to recover backpay through the date judgment is entered.  *See, e.g.*,

*Balbour v. Merrill*, 48 F.3d 1270, 1279 (D.C. Cir. 1995) (recognizing the "presumption that back

pay should extend through the date of judgment"); *Ekandem v. District of Columbia*, No. 91-

1060, 1992 WL 138991, at *3 (D.D.C. Apr. 13, 1992) (holding that "victorious Title VII

plaintiffs are presumptively entitled to back pay until the date judgment is entered in the case")

(internal quotations omitted); *see also Fogg v. Gonzales*, 492 F.3d 447, 454 (D.C. Cir. 2007)

(affirming the district court's award of backpay to a Title VII plaintiff through the date of final

judgment).

This "presumption that back pay will extend through the date of judgment" is tied to the

notion that backpay is intended to make the victim whole and "restore him or her to the

economic position he or she would have occupied but for the unlawful conduct of his or her

---

[2] *See* Jan. 22, 2010 Mem. Op. at 2 (noting that the Court-imposed December 31, 2007 "cut-off" date for discovery of backpay data does not operate to limit Plaintiffs' entitlement to backpay damages through the date of judgment should Plaintiffs' prevail.)

employer." *See Balbour*, 48 F.3d at 1279 (internal quotations omitted).  That is, since the injuries and economic harms suffered by Title VII plaintiffs usually are not rectified until judgment is entered, backpay awards generally extend to the date of judgment.  *See id.* ("[T]he presumption that back pay will extend through the date of judgment derives from the related presumption that the employer will then rectify the discrimination by hiring or reinstating the employee.").

Accordingly, as the Magistrate Judge's January 22, 2010 Memorandum Opinion recognizes, should Plaintiffs prevail on their retaliation claims, they are entitled to recover backpay damages up through the date judgment is entered in their favor; that is, Plaintiffs would be entitled to backpay far beyond the December 31, 2007 limit the Court set on Defendant's current obligation to produce pay data.  The Magistrate Judge's decision to require immediate production of backpay data only until December 31, 2007 precludes Plaintiffs from calculating their total backpay losses and is therefore inconsistent with the governing case law holding that backpay awards extend to the date of judgment.  The case law recognizing Plaintiffs' entitlement to backpay through the date of judgment should they prevail does not provide any basis for the Magistrate Judge's decision to deny Plaintiffs access to backpay data for the majority of the damages period until the eve of trial.  For these reasons, the Magistrate Judge's ruling is contrary to law.

**B.  Requiring the Parties to Conduct Expert Discovery on Plaintiffs' Backpay Damages Before Plaintiffs Are Given Access to Backpay Data For Over Half The Damages Period Is Clearly Erroneous.**

The Magistrate Judge's ruling denying Plaintiffs' access to backpay data for over half the damages period until the eve of trial is clearly erroneous because it defeats the intended purposes

of expert discovery, places unnecessary financial and practical burdens on the parties, and frustrates potential settlement talks.

The backpay damages period in this case extends from the date Plaintiffs first suffered retaliation following their June 2006 complaint to the date judgment is entered in this case.  With trial in this matter scheduled to commence in June 2010, the backpay damages period is approximately four years.  The Magistrate Judge's ruling requires Defendant to produce backpay data only up until December 31, 2007 at this time, with the expectation that Plaintiffs would be given access to pay data for the remaining half of the damages period "immediately prior to the trial."  *See* Jan. 22, 2010 Mem. Op. at 2.

As a result, the Magistrate Judge's ruling requires Plaintiffs to prepare a backpay expert report and conduct expert discovery using backpay data for only sixteen months of the four-year damages period.  Plaintiffs would then be required to conduct a new backpay expert analysis on the eve of trial once Plaintiffs had finally been granted access to the pay data for the remaining years of the damages period.

This result is clearly erroneous for several reasons.  First, this outcome defeats one of the primary purposes of expert reports and expert discovery: namely, to place the parties on notice as to the opinions an expert will present in the litigation and the calculations upon which those opinions are based.  *See* Fed. R. Civ. P. 26(a)(2); *see also* Notes to 1993 Amendments to Rule 26(a)(2) (noting that the rule imposes a duty to disclose expert testimony "sufficiently in advance of trial" to allow the parties to prepare accordingly).  Because Plaintiffs would not have access to pay data for the majority of the damages period until *after* their expert report is due and *after* expert discovery closes, expert discovery would only address expert opinions based on a small portion of the relevant backpay data and a small subset of the damages period.

The Magistrate Judge's ruling essentially prevents Plaintiffs from analyzing the financial implications of all of the retaliation Plaintiffs suffered over a period of years, until just before trial.  For example, after having spent years working in plainclothes in a specialized unit, in Spring 2008 Plaintiffs Goins and James were subjected to retaliatory transfers to uniformed patrol positions—positions just like those they had as rookies.  Their transfers significantly diminished Plaintiffs' opportunities to earn overtime.  However, under the Magistrate Judge's ruling, Plaintiffs are denied the pay records necessary to document the financial impact of Plaintiffs' 2008 retaliatory transfers until the eve of trial.  By requiring Plaintiffs to conduct expert discovery with only a fraction of the essential backpay data to which they are entitled, the Magistrate Judge's Order defeats the intended purposes of expert discovery and is therefore clearly erroneous.

Second, the Magistrate Judge's Order is also clearly erroneous because it creates significant additional financial and practical burdens that could otherwise be avoided.  Under the Magistrate Judge's ruling, Plaintiffs would be forced to expend the time and money associated with conducting essentially two separate expert reports: one submitted during expert discovery covering the first sixteen months of the four-year damages period and one submitted on the eve of trial covering the remaining years of the damages period.  The parties would therefore be forced to conduct expert discovery with only half an expert report.  Plaintiffs then would be forced to prepare an entirely new expert report covering the remaining years of the retaliation/damages period at the same time as Plaintiffs are preparing for trial.  Denying Plaintiffs access to over half of the data essential to calculate their losses until immediately prior

to trial thus imposes a time-consuming and expensive burden on the parties that could otherwise be avoided.[3]

Third, the Magistrate Judge's ruling has the effect of inhibiting potential settlement discussions, which further demonstrates that the ruling is clearly erroneous.  Denying Plaintiffs access to backpay data for over half of the damages period until the eve of trial prevents the parties from being able to accurately determine Defendant's potential exposure until trial. The Magistrate Judge's ruling thus undermines the parties' ability to evaluate the value of the case, which, in turn, hinders any potential settlement discussions.

Finally, the clear error of the Magistrate Judge's ruling is further apparent given the absence of any burden associated with producing pay data through the present along with the rest of the pay data ordered produced.  Defendant was ordered to produce the required backpay data in a useable electronic format.  Producing pay data therefore merely requires saving an electronic Excel spreadsheet onto a disc.  Changing the end date of the spreadsheet from 2007 to 2010 imposes no additional burden; all Defendant would have to do is change the date field on the spreadsheet from one date to another.  Therefore, producing a spreadsheet of data ending in 2010 imposes no greater burden on Defendant than producing the spreadsheet ending in 2007.[4]

The Magistrate Judge's underlying assumption that limiting Plaintiffs' access to the necessary pay data would expedite the discovery process is clearly incorrect; denying Plaintiffs the data they need to calculate their backpay damages until the eve of trial actually will have the opposite effect of undermining the goals of expert discovery, imposing additional obstacles, and

---

[3] There is a significant practical difference between allowing Plaintiffs to supplement their reported backpay damages with the few months-worth of additional losses occurring between expert discovery and trial and denying Plaintiffs access to data for over half of the four-year damages period until the eve of trial.

[4] Indicative of the lack of burden associating with producing additional backpay data, Defendant, of its own accord, produced to Plaitnffs pay data for one officer for three years *prior* to the period ordered by the Court.

hindering the possibility of settlement negotiations.  Further, no burden is avoided by delaying

Defendant's electronic production of essential pay data; instead, the delay only increases the

financial and practical burdens on the parties.

## CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court order Defendant to

supplement its Court-ordered production of pay data to include data up until the present, with the

understanding that Defendant will supplement its production at the time of trial by producing up-

to-data pay data.

Respectfully Submitted,

/s/ Megan Moran-Gates
John P. Relman (D.C. Bar No. 405500)
Jennifer I. Klar (D.C. Bar No. 479629)
Katherine A. Gillespie (D.C. Bar No. 480013)
Megan Moran-Gates (D.C. Bar No. 981553)
RELMAN & DANE PLLC
1225 19th Street, N.W.
Suite 600
Washington, D.C. 20036
(202) 728-1888
(202) 728-0848 (fax)
*Attorneys for Plaintiffs*

Dated:  January 27, 2010